# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

IN RE:

VICTORINE TOLLIVER AND JOHNNY LEE      CHAPTER 13
TOLLIVER, NONFILING CO-DEBTOR;      CASE NO. 16-30048

       Debtor(s)

## MOTION TO LIFT THE AUTOMATIC STAY AND CO-DEBTOR STAY

Comes now Ocwen Loan Servicing LLC ("Ocwen Loan Servicing LLC"), as servicing agent for The Bank of New York Mellon, f/k/a, The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as successor in interest to Bank One, National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 1999-SP1 ("The Bank of New York Mellon"), and moves this Court, pursuant to 11 U.S.C. § 362, for an order lifting the automatic stay on certain property which is currently subject to an interest held by The Bank of New York Mellon and shows unto the Court the following:

1.     The Bank of New York Mellon is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $55,250.00, executed by Debtor(s), and payable to the order of MORCAP, INC., and is secured by a mortgage on certain real estate located at 3229 Raintree Drive, Montgomery, AL 36116 in Montgomery County, Alabama, as evidenced by the attached instruments.

2.     Ocwen Loan Servicing LLC avers that as of June 22, 2016, Debtor(s) has/have been in default in the payment of the post-petition installments due The Bank of New York Mellon, as assignee of said note and mortgage, pursuant to the terms of said note, since May 01, 2016 and thereafter. As of June 22, 2016, the unpaid principal balance of the Note is $45,847.84

3.     Ocwen Loan Servicing LLC holds and/or services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses,

and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of The Bank of New York Mellon, f/k/a, The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as successor in interest to Bank One, National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 1999-SP1 ("Noteholder").

4.    Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

WHEREFORE, Ocwen Loan Servicing LLC/The Bank of New York Mellon respectfully requests that the Court issue an order stating that the automatic stay is lifted pursuant to 11 U.S.C. § 362, and said property be released to Ocwen Loan Servicing LLC/The Bank of New York Mellon to permit it to liquidate its security and to apply the proceeds to said indebtedness secured thereby, and to such other relief to which it may be entitled.

By: /s/ Evan Eberhardt
Evan Eberhardt
Ocwen Loan Servicing, LLC
244 Inverness Center Dr
Ste 200
Birmingham, AL 35242
(205) 970-2233

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following using the CM/ECF System, on July 11, 2016, to-wit:

Joshua C. Milam
Shinbaum & Campbell
566 S. Perry Street
Montgomery, AL 36104
jmilam@smclegal.com


Curtis C. Reding
P. O. Box 173
Montgomery, AL 36101

And by United States Mail, postage prepaid and properly addressed to:

Victorine Tolliver
Johnny Lee Tolliver
3229 Raintree Dr
Montgomery, AL 36116

By: /s/ Evan Eberhardt
Evan Eberhardt

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama (Montgomery)

IN RE:

Victorine Tolliver

**CHAPTER 13**
**CASE NO. 16-30048**

Debtor(s)

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, _____ Brian Ader _____, declare under penalty of perjury as follows:

1.    I am employed as a _____Contract Management Coordinator_____ of Ocwen Loan Servicing LLC ("Ocwen Loan Servicing LLC"), and am authorized to sign this affidavit on behalf of Ocwen Loan Servicing LLC as servicer for The Bank of New York Mellon, f/k/a, The Bank of New York as successor in interest to JPMorgan Chase Bank, National Association, as successor in interest to Bank One, National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 1999-SP1 ("Movant"). This affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    I make this affirmation based upon my review of the records with regard to this underlying transaction, which are kept in the ordinary course of business of Ocwen Loan Servicing LLC. As part of my job responsibilities for Ocwen Loan Servicing LLC, I have personal knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing LLC in connection with the loan that is subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records, and files of Ocwen Loan Servicing LLC that pertain to the Loan and extensions of credit to Debtor(s) concerning the property securing such Loan.

3.    The information in this this affidavit is taken from Ocwen Loan Servicing LLC's

business records regarding the Loan. The records are (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing LLC to make such records.

4. The Debtor(s) Victorine Tolliver and Co-signer Johnny Lee Tolliver has/have executed and delivered or is/are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). The Debtor(s) Victorine Tolliver and Co-signer Johnny Lee Tolliver has/have executed and delivered or is/are otherwise obligated with respect to that certain Mortgage referenced in the Motion (the "Mortgage"). Pursuant to that certain Mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor(s) under and with respect to the Note and Mortgage are secured by the property referenced in the Motion.

5. As of June 22, 2016, there are one or more defaults in paying Debtor(s) post-petition amounts due with respect to the Note.

6. As of June 22, 2016, the unpaid principal balance of the Note is $45,847.84

7. The following chart sets forth those postpetition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of June 22, 2016:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Optional Products | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|---|
| 2 | 05/1/2016 | 06/1/2016 | $163.01 | $76.51 | $0.00 | $239.52 | $479.04 |
| | | | | | | | |
| | | | | | | | |
| Less postpetition partial payments (suspense balance): | | | | | | | ($0.00) |

**TOTAL: $479.04**

8.    As of June 22, 2016, the total postpetition arrearage/delinquency is $479.04 consisting of (i) the foregoing total of missed postpetition payments in the amount of $479.04 plus the following postpetition fees[1]:

| Description | Amount |
| --- | --- |
| N/A | N/A |
| N/A | N/A |

9.    Attached hereto as Exhibit A is a postpetition payment history as of June 22, 2016.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30TH day of JUNE, 2016.

Name: **Brian Ader**
Title: Contract Management Coordinator

(STATE OF FLORIDA)
(COUNTY OF PALM BEACH)

The foregoing instrument was acknowledged and sworn before me _Katie Drouin_ this 30TH day of _June_, 2016, by _Brian Ader_, as a _Contract Management Coordinator_ of Ocwen Loan Servicing LLC, who is Personally known to me or has produced _____ as identification.

Notary Public State of Florida
Katie Drouin
My Commission FF 903925
Expires 07/27/2019

Katie Drouin
NOTARY PUBLIC – State of Florida
My Commission Expires: 7·27·19

| Name: | Victorine Tolliver | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number | 16-30048 | | | | | | |
| Filing Date: | 1/7/2016 | | | | | | |
| Post First Due: | 2/1/2016 | | | Completed By: | kmpraffu | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
| 2/1/2016 | 3/29/2016 | $ 320.26 | $ 239.52 | $ 80.74 | $ 80.74 | |
| 3/1/2016 | 5/5/2016 | $ 350.00 | $ 239.52 | $ 110.48 | $ 191.22 | |
| 4/1/2016 | 5/5/2016 | | $ 191.22 | $ (191.22) | $ - | Short Payment Accepted |

# NOTE

September  8, 1998       MONTGOMERY                    ,        Alabama
[Date]                  [City]                               [State]

3229 RAINTREE DRIVE, MONTGOMERY, AL 36116
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 55,250.00          (this amount is called "principal"),
plus interest, to the order of the Lender. The Lender is
   MORCAP, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly
rate of  12.200  %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3.   PAYMENTS**
   **(A)  Time and Place of Payments**
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the 14th day of each month beginning on October 14, 1998     . I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I may
owe under this Note. My monthly payments will be applied to interest before principal. If, on  September 14, 2028 , I
still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
   I will make my monthly payments at  SOUTHERN PACIFIC FUNDING CORPORATION     ATTN: CASHIERS, P.O. BOX 808019,
PETALUMA, CA 94975-8019                                      or at a different place if required by the Note
Holder.
   **(B)  Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 576.83                     .

**4.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make prepayments of principal at any time before they are due
without penalty.  A payment of principal only is known as a "prepayment".  When I make
a prepayment, I will tell the Note Holder in writing that I am doing so.  The Note
Holder will use all of my prepayments to reduce the amount of principal that I owe
under this Note.  If I make a partial prepayment, there will be no changes in the due
date or in the amount of my monthly payments unless the Note Holder agrees in writing
to those changes.

**5.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated
as a partial prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A)  Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000  % of my overdue
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   **(B)  Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C)  Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by
a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and
all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered
or mailed to me.

INITIALS _____  INITIALS _____  INITIALS_____   INITIALS_____

FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Alabama - Form 3200  12/83 (Amended 5/91)            Page 1 of 2                              FNBLPMU1 05/96

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CAUTION: It is important that you thoroughly read the contract before you sign it.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JOHNNY LEE TOLLIVER                -Borrower

_____ (Seal)
VICTORINE TOLLIVER                 -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

SSN:

Pay to the Order of

Without Recourse
MORCAP, INC.

_____
Name
Title

SSN:

**PAY TO THE ORDER OF:**

[Sign Original Only]

**WITHOUT RECOURSE**
Morcap, Inc.

Rebecca M. Judge
Attorney-In-Fact

FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Alabama - Form 3200   12/83 (Amended 6/91)                    Page 2 of 2                        FNBLPMU2 05/96

Please Return To:
MORCAP, INC.
7000 CENTRAL PARKWAY, STE 1570
ATLANTA, GA 30328

THIS IS A TRUE AND
CERTIFIED COPY OF
THE ORIGINAL

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on          September   8       , 19 98 .

The mortgagor is  JOHNNY LEE TOLLIVER and VICTORINE TOLLIVER, HUSBAND AND WIFE

("Borrower").

This Security Instrument is given to  MORCAP, INC.

whose address is 7000 CENTRAL PARKWAY, STE. 1570, Atlanta, GA 30328

("Lender").

Borrower owes Lender the principal sum of     fifty five thousand two hundred fifty and NO/100ths

Dollars (U.S. $    55,250.00           ).  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   September 14, 2028   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in   MONTGOMERY   County, Alabama:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of        3229 RAINTREE DRIVE, MONTGOMERY
                                          [Street]                                                    [City]

Alabama            36116            ("Property Address");
                  [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: J.T. V.T.

ALABAMA—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3001  9/90

Page 1 of 4

SIALCI (3/91)

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost

Page 2 of 4

Initials: _L.Z.Y._  _W._ ___

SIC2 12/96

to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Page 3 of 4

Initials: _____ _____

SfC3 12/96

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in MONTGOMERY                       County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all right of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Adjustable Rate Rider            ☐ Condominium Rider                    ☐ 1-4 Family Rider
☐ Graduated Payment Rider          ☐ Planned Unit Development Rider       ☐ Biweekly Payment Rider
☐ Balloon Rider                    ☐ Rate Improvement Rider              ☐ Second Home Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                       JOHNNY LEE TOLLIVER              -Borrower

_____        _____ (Seal)
                                       VICTORINE TOLLIVER              -Borrower

                                       _____ (Seal)
                                                                       -Borrower

                                       _____ (Seal)
                                                                       -Borrower

——————————————————— [Space Below This Line For Acknowledgment] ———————————————

STATE OF ALABAMA,              Montgomery          County ss:

On this __8th__ day of ____September__, 1998, I, __Rebecca L. Cason__

_____, a Notary Public in and for said county and in said state, hereby certify that
JOHNNY LEE TOLLIVER and VICTORINE TOLLIVER

whose name(s) ____are____ signed to the foregoing conveyance, and who __are__ known to me, acknowledged before me that, being informed of the contents of the conveyance, __they__ executed the same voluntarily and as __their__ act, on the day the same bears date.

Given under my hand and seal of office this ___8th___ day of ____September, 1998___

My Commission Expires:        6-18-2001            _____Rebecca L. Cason_____
                                                        Notary Public

Exhibit "A" to Mortgage executed by Johnny Lee Tolliver and Victorine Tolliver to Morcap, Inc., dated September 8, 1998, in the principal amount of $55,250.00

Lot 14, Block A, according to the Map of Raintree Drive, Plat No. 1, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 27, at Page 244.

APN # 03-10-08-34-04-001-067-000
Prepared by  Joe Simmons
When Recorded Mail To
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number  561-682-8835
613024767099
Attorney Code  24079 BR

MERS Ph.#:  (888) 679 – 6377

## ASSIGNMENT OF MORTGAGE
## ALABAMA

This **ASSIGNMENT OF MORTGAGE** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, whose address is PO Box 2026 Flint, MI 48501-2026, its successors and assigns, (Assignor) to **THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1999-SP1** whose address is c/o Ocwen Loan Servicing, LLC 5720 Premier Park Dr, West Palm Beach, FL 33407, (Assignee), all its rights, title and interest in and to a certain mortgage duly recorded in the Probate Office of **MONTGOMERY** County, State of **ALABAMA**, as follows:

Mortgagor: JOHNNY LEE TOLLIVER AND VICTORINE TOLLIVER
Mortgagee:  MORCAP, INC.
Document Date:  SEPTEMBER 08, 1998
Amount: $ 55,250.00
Date Recorded:  SEPTEMBER 21, 1998
Mortgage Book:  1907
Page/Folio:  0136
Property Address:  3229 RAINTREE DRIVE, MONTGOMERY, AL 36116
Property described as follows:

**LEGAL DESCRIPTION:**
Exhibit "A" to Mortgage executed by Johnny Lee Tolliver and Victorine Tolliver to Morcap, Inc., dated September 8, 1998, in the principal amount of $55,250.00

Lot 14, Block A, according to the Map of Raintree Drive, Plat No. 1, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 27, at Page 244.

This Assignment is made without recourse, representation or warranty.
DATED: OCTOBER 07. 2013.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS)**
BY: _____

NAME: _____**Noemi Morales**_____

TITLE:  Assistant Secretary

STATE OF FLORIDA                           )
                                           )SS.
COUNTY OF PALM BEACH                        )

Signed, sealed and delivered in
the presence of:

(1) _____**Jason R. Berkeley**_____

(2) _____**Derek Garrett**_____

Subscribed and sworn to me by _____**Noemi Morales**_____ , the Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** He/She is personally known to me.
Given under my hand and seal this the 07TH day of OCTOBER, 2013.

Notary Public State of Florida
Victoria Vazquez
My Commission EE 845391
Expires 10/21/2016

NOTARY PUBLIC – **Victoria Vazquez**



 *Ocwen Loan Servicing, LLC*
P.O.Box 785052
*Orlando, Florida 32878*

OCWEN

WWW.OCWEN.COM

February 13, 2009

Johnny Lee Tolliver
Victorine Tolliver
3229 Raintree Drive
Montgomery, AL 36116

Property Address: 3229 Raintree Drive, Montgomery, AL 36116

### PROPOSED MODIFICATION AGREEMENT

Dear Borrower(s):

Enclosed please find a proposed modification agreement (the "Agreement") on your loan referenced above for your review and consideration.

In order to accept this modification on your loan, you must complete ALL of the following steps **on or before** February 26, 2009, ("Due Date"):

1. **SIGN** the bottom of the Agreement on the line(s) for the Borrower(s);

2. **FAX** the fully executed Agreement to:  Attention: Home Retention Department
   (407) 737-5693

3. **PAY** the full down payment in the amount of:  $576.83
   *[See Payment Instructions Attached]*

4. **NEW MONTHLY PAYMENT:**  $232.90 **(which may or may not include escrow)** starting on March 14, 2009.

5. **SEND** proof of insurance coverage*  Attention: Escrow Department
   (Send proof of insurance ONLY to Escrow  Fax: 1-888-882-1816
   Dept. DO NOT include the Agreement.)  E-mail:dateinsuranceinfo@ocwen.com

\* Proof of insurance and the Agreement must be sent separately to the correct departments using the fax numbers provided above. Failure to send proof of insurance coverage before the Due Date will constitute acceptance of a force placed policy and agreement to pay the costs of such force placed policy, so long as all other items are complete.

Time is of the essence on this offer. If ALL of the items above are not completed by the Due Date, the Agreement shall have no force or effect and any down payment received will be returned to you. Please be advised that Ocwen Loan Servicing, LLC will not delay, postpone or otherwise stop any collection efforts until ALL of the steps above have been completed.

If you have any questions or require additional information, please contact the Home Retention Department directly at (877) 596-8580.

Sincerely,

Ocwen Loan Servicing, LLC

30247670

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

**Ocwen Loan Servicing, LLC**
P.O.Box 785052
Orlando, Florida 32878

WWW.OCWEN.COM

---

## PAYMENT REMITTANCE INFORMATION
### PLEASE DON'T FORGET TO:

1. Make checks payable to Ocwen Loan Servicing, LLC.
2. Always include your loan number with your payment.
3. The down payment must be in the form of certified funds.

**OVERNIGHT DELIVERY**
(Money Order & Certified Checks Only)
OCWEN LOAN SERVICING, LLC
ATTN: CASHIERING DEPARTMENT
12650 INGENUITY DRIVE
ORLANDO, FL 32826

**MONEY GRAM**
RECEIVER CODE: 3237
PAYABLE TO: OCWEN LOAN SERVICING, LLC
CITY: ORLANDO
STATE: FLORIDA
REFERENCE: 30247670
AGENT LOCATER: (800) 926-9400

**BANK WIRE**
BANK: JPMorgan Chase Bank, NA
ABA: 021000021
ACCOUNT NAME: Ocwen Financial Corporation
ACCOUNT NUMBER: 00113339999
REFERENCE: Loan Number, Property Address,
and Borrower Name

Email: Transferfunds@ocwen.com with the details
of the wire.

**BY WUOC**
Code City: Ocwen
State: FL
Reference: Loan # 30247670
Attn: Home Retention Department,
Home Retention Consultant

### LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated February 13, 2009, which modifies the terms of your home loan obligations as described in detail below:

A. the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of MONTGOMERY County, and

B. the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 3229 Raintree Drive, Montgomery, AL 36116.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1. You agree that the new principal balance due under your modified Note and the Mortgage will be $51,074.01. Upon modification, your Note will become contractually current; however, fees and charges that were not included in this principal balance will be your responsibility.

2. You promise to make an initial down payment in the amount of $576.83 on or before February 26, 2009, after which you will commence payments of principal and interest in the amount of $232.90 beginning on March 14, 2009 and continuing on the same day of each succeeding month for a five (5) year period. At the end of this period, your payment is subject to change based on paragraph 4 below.

3. Any payments due for taxes and insurance will be your responsibility in addition to the payments of principal and interest required under the terms of this modification. If this loan is currently escrowed, Ocwen will continue to collect the escrow amounts with your monthly principal and interest payment.

4. Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be 4.60000%. This rate will remain in effect until the end of a five (5) year period beginning with your first payment after the down payment. At the end of this period, your interest rate will be calculated according to the terms of your original loan documentation.

30247670

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.



**Ocwen Loan Servicing, LLC**
P.O.Box 785052
Orlando, Florida 32878

WWW.OCWEN.COM

5.  You promise to make payments of principal and interest on the same day of each succeeding month until September 14, 2028, at which time a final balloon payment in an amount equal to all remaining amounts under the Note and Modification will be due.

6.  You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

7.  If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8.  You understand and agree that:

    (a)  All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

    (c)  Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

    (d)  You have no right of set-off or counterclaim, or any defense to the obligations of your Note or Mortgage.

    (e)  Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

    (f)  You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

    (g)  You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

    (h)  Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

9.  BY EXECUTING THIS MODIFICATION, YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH ANY CLAIMS, ACTIONS OR CAUSES OF ACTION, STATUTE OF LIMITATIONS OR OTHER DEFENSES, COUNTERCLAIMS OR SETOFFS OF ANY KIND WHICH EXIST AS OF THE DATE OF THIS MODIFICATION, WHETHER KNOWN OR UNKNOWN, WHICH YOU MAY NOW OR HEREAFTER ASSERT IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTION OR THE ENFORCEMENT BY OCWEN OF THE LOAN DOCUMENTS, THIS MODIFICATION OR ANY OTHER RELATED AGREEMENTS.

10.  BY EXECUTING THIS MODIFICATION, YOU IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS MODIFICATION AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS MODIFICATION.

30247670

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

Ocwen Loan Servicing, LLC
P.O.Box 785052
Orlando, Florida 32878

WWW.OCWEN.COM

Ocwen Loan Servicing, LLC

By: **NEIL DYSON**
Sr. Manager of Investor Relations
and Loan Surveillance

Borrower: Johnny Lee Tolliver

Borrower: Victorine Tolliver

30247670

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if
the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an
attempt to collect a debt.